# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-CR-38-TS |
| | ) | |
| DARRELL F. JACKSON | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Suppress Evidence [DE 19] and Memorandum in Support [DE 20], to which is attached an Affidavit of Darrell Jackson, all of which were filed on June 25, 2008. On August 15, the Court conducted an evidentiary hearing, at which both parties presented evidence. On October 28, the parties filed a Stipulation [DE 33]. On November 20, the Defendant filed a Brief in Support [DE 35]. On January 5, 2009, the Government filed its Response Brief [DE 36], and on January 28, the Defendant filed his Reply [DE 37].

## BACKGROUND

### A.    The Institution of This Case

On April 23, 2008, the grand jury returned a two-count Indictment [DE 11] against the Defendant. The first count charges that on or about April 17, 2008, the Defendant knowingly and intentionally possessed with intent to distribute a controlled substance, namely, five grams or more but less than fifty grams of a mixture and substance containing a detectable amount of cocaine base, or crack, in violation of 21 U.S.C. § 841(a)(1). The second count charges that the Defendant, as a felon, knowingly possessed in and affecting commerce a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The prior felony was an April 6, 1998,

conviction for possession of cocaine in the Allen Superior Court in Fort Wayne, Indiana, Cause No. 02D04-9711-DF-733.

**B.      The Search Warrant, the Affidavit, and the Execution of the Warrant**

On April 11, 2008, an Allen Superior Court judge issued a Search Warrant. It authorized the Allen County Police Department to enter upon a particular dwelling on Esmond Street in Fort Wayne, Indiana, to search in and around the dwelling for evidence related to drug activity, including cocaine, marijuana, and their derivatives, United States currency, firearms, records of drug transactions, and/or financial information related to narcotics trafficking that constitutes evidence of alleged transactions and illegal possession of these controlled substances. The Search Warrant states that an Affidavit had been filed with the judge that established probable cause for the Search Warrant.

The Search Warrant Affidavit filed with the Allen Superior Court judge was sworn to by Jack Cain of the Allen County Police Department and is dated April 11, 2008. The Search Warrant Affidavit is also signed by Deputy Prosecuting Attorney Jeffrey A. Stineberg and the Allen Superior Court judge. The eight-paragraph, two-and-a-half-page Search Warrant Affidavit begins with Detective Cain's statement that he believes there is probable cause to believe that evidence of drug activity, including drug transactions and illegal possession of cocaine, marijuana, and derivatives thereof, is concealed on or about the dwelling at the particular address on Esmond Street in Fort Wayne, Indiana.

In Paragraph 2, the Search Warrant Affidavit summarizes information Detective Cain received during a March 3, 2008, telephone call from an anonymous individual, the voice of

whom Detective Cain stated he recognized from previous telephone calls. Detective Cain attested that this individual had proven to be credible and reliable and had provided information and/or assisted the Drug Task Force in the past that had resulted in the seizure of narcotics and the arrest of individuals for drug-related crimes. Detective Cain stated that this individual provided the following information relevant to Darrell Jackson: the individual has personal knowledge that Darrell Jackson, identified as a black male person, is dealing crack and powder cocaine out of his residence at the particular address on Esmond Street; the individual has been to this residence numerous times and has witnessed Darrell Jackson dealing large amounts of crack and powder cocaine; Darrell Jackson does not work but makes his living dealing drugs and supplies many of the drug dealers in the Eden Greene Apartment complex; Darrell Jackson deals approximately 6 or 7 ounces a week and has mentioned buying half of a kilogram in the past; Darrell Jackson has a safe hidden in the residence where he stores money and drugs; the individual witnessed several guns in the residence; and Darrell Jackson recently bought a blue-colored GMC Yukon with 24 inch rims. Detective Cain also attested that he conducted a search in the Spillman Computer System, located a Darrell F. Jackson with a certain date of birth in 1976, and learned that Darrell Jackson had been arrested in the past for dealing cocaine, possessing cocaine, pointing a firearm, intimidation, criminal confinement, and auto theft, and that he had an alert code for "transportation of crack cocaine." (Search Warrant Aff. 1, Gov't Ex. 4.) He also checked Bureau of Motor Vehicles records, which revealed that Darrell Jackson listed the particular address on Esmond Street as his home address on his driver's license and his vehicle registration.

In Paragraph 3, Detective Cain stated that he and other detectives from the Drug Task

Force had, on numerous occasions, conducted surveillance of the particular residence on Esmond Street and observed a blue-colored 1997 GMC Yukon with an Indiana environmental license plate with a specific number and large chrome rims parked in front of the residence. Detective Cain indicated that he checked Bureau of Motor Vehicle records and determined that the license plate number was registered to Darrell Jackson who resided at the particular address on Esmond Street in Fort Wayne, Indiana.

In Paragraph 4, Detective Cain stated that, on April 8, 2008, he conducted drive-by surveillance of the Esmond Street residence and observed Jerrico Jackson (Darrell Jackson's brother) leaning into the window of an SUV in front of the residence. Detective Cain attested that he was familiar with Jerrico Jackson from a prior narcotics investigation in which a search warrant was served at Jerrico Jackson's residence after controlled purchases of crack cocaine had been made from Jackson.[1] Detective Cain stated that a check of the Spillman Computer System revealed that Jerrico Jackson had been arrested for dealing cocaine on four different occasions and had recently been released from prison for a 2003 conviction for dealing cocaine.

In Paragraph 5, Detective Cain stated that, on April 9, 2008, he received another telephone call from the same anonymous individual discussed in Paragraph 2 of the Search Warrant Affidavit. Detective Cain attested that the individual told him that Darrell Jackson and his girlfriend had separated, that she and her children are no longer living at the Esmond Street residence, that Darrell Jackson's brother, Jerrico, had recently been released from prison and was living with Darrell, and that "the house is even busier now, with all kinds of Darrell's drug

---

[1] This sentence of the Search Warrant Affidavit is unclear as to whether the "Jackson" referenced is Jerrico or Darrell, although Paragraph 4 deals primarily with facts related to Jerrico Jackson. (Search Warrant Aff. 2, Gov't Ex. 4.)

dealing buddies hanging out at the house." (Search Warrant Aff. 2, Gov't Ex. 4.)

In Paragraph 6, Detective Cain stated that, on April 10, 2008, he and Detective McDonald conducted a garbage pick up at the Esmond Street address, that the "garbage had been placed out along the edge of the street directly in front of the residence for regular collection," that the "trash had been set out on the regular collection night for trash collection in that area and in the same manner as area homes," and that they "retrieved the trash in a quiet manner." (Search Warrant Aff. 2, Gov't Ex. 4.) According to the Search Warrant Affidavit, the contents of the garbage included the following: approximately 31 clear plastic baggies with missing corners, knotted baggies, and baggie corners, 5 of which field tested positive for cocaine; a clear plastic bag containing a rock of suspected crack cocaine, which field tested positive for cocaine; 5 single-edged razor blades, several of which tested positive for cocaine; green plant material, which field tested positive for marijuana; several pieces of mail addressed to Darrell Jackson at the particular address on Esmond Street in Fort Wayne, Indiana; and an April 4, 2008, receipt from H & H Firearms for the purchase of 2 boxes of ammunition (one of 9mm ammunition and one of .40 caliber ammunition).

In Paragraph 7, Detective Cain stated facts relative to his experience and training, his understanding that narcotics traffickers commonly use plastic bags to package narcotics and possess firearms, and his belief (based upon the facts of the case) that the illegal trafficking occurring at the particular address on Esmond Street is a continuing enterprise. His experience included thirteen years as a police officer and participation in over 1000 narcotics investigations, and his training included training in the methods and practices of narcotics traffickers. In Paragraph 8, Detective Cain requested that the judge issue the Search Warrant, which the judge

did.

**C.     The Defendant's Motion to Suppress Evidence and His Arguments in Support**

In his Motion to Suppress Evidence [DE 19], the Defendant asks the Court to suppress any and all evidence seized as a result of the search of the residence located at the particular address on Esmond Street in Fort Wayne, Indiana. He argues that the Search Warrant Affidavit did not contain sufficient facts to establish probable cause, that the Affidavit includes false statements that were made either knowingly or intentionally or in reckless disregard for the truth, and that these false statements were necessary to the finding of probable cause.

In his Memorandum in Support [DE 20], the Defendant expands upon the arguments made in his Motion to Suppress. The Defendant argues that the Search Warrant Affidavit alone provided the factual basis for the judge who issued the Search Warrant and thus that the validity of the Search Warrant turns on the sufficiency of the Search Warrant Affidavit. He adds that the Search Warrant Affidavit does not contain sufficient facts to provide a basis for a belief that a search would uncover contraband or evidence of a crime and thus that probable cause did not exist. He also argues that the Search Warrant Affidavit provides no timeframe for the telephone calls from the anonymous individual or for the allegations made in the Affidavit, that there is not sufficient information from which the judge would know why Detective Cain would rely on the information, and that the reliability and credibility of the information provided by the anonymous caller have not been established. Additionally, he urges that Detective Cain's surveillance of the residence does not corroborate the informant's information because the Defendant has never owned a blue-colored 1997 GMC Yukon and the Spillman records only

indicate his arrests for certain alleged crimes, but not the dismissal of charges. Finally, the Defendant argues that the police improperly picked up and searched the contents of his trash can and garbage because the Defendant had not placed his trash can along the edge of the street that night, and thus he claims he did not abandon any expectation of privacy or discard the garbage. Suggesting that the Search Warrant Affidavit includes a false statement (apparently from the context regarding the trash search) that was knowingly and intentionally made, or made in reckless disregard for the truth, and that the alleged false statement was necessary to the judge's finding of probable cause, the Defendant requests a *Franks* hearing to determine the validity of the warrant issued.

**D.     The Evidentiary Hearing**

On August 15, 2008, the Court conducted an evidentiary hearing on the Defendant's Motion to Suppress. At the evidentiary hearing, the Defendant called LeRoy McGraw, the Defendant's next door neighbor, to testify, and the Defendant himself testified. The Government called Detective Earl McDonald and Detective Jack Cain. The Defendant also testified in rebuttal, after the Government's witnesses testified. Both the Defendant and the Government offered exhibits into evidence during the testimony of the witnesses.

**1.     *The Testimony of LeRoy McGraw***

Mr. McGraw, the Defendant's next door neighbor, testified that, during the relevant period, garbage was usually picked up on Thursday mornings. Residents who lived in homes on Esmond Street could take their trash either to the alley behind the houses or to the street in front

of the houses for collection. His boys (and, at the most about once a month, he) placed his trash at the street in front of the house for collection, and his boys would usually place the trash bin there on Wednesday nights, but sometimes on Thursday mornings. (Tr. 10–12.) Mr. McGraw testified that he "sometimes" saw Darrell Jackson putting his trash out. (Tr. 10.) When he did see Darrell Jackson putting his trash out, it would be early Thursday morning, but never on Wednesday evening. However, "most of the time" his boys got the trash out on Wednesday nights, and "most of the time" he would not be "out there on Thursday morning for the trash pick up." (Tr. 11.) Additionally, he testified that he was not watching what Darrell Jackson was doing, that he did not pry into Darrell Jackson's life, and that "most of the time, like I said, Darrell usually brings his out on Thursday morning right before because he be [sic] up." (Tr. 12–13.) Mr. McGraw did not know if there came a time when Darrell Jackson's wife (actually girlfriend) and the children moved out of the Esmond Street residence and did not know if the Defendant's brother or another relative moved into the residence. He testified that Darrell Jackson had a navy blue Chevy Suburban and a brown Suburban, that a Suburban is a little longer (with a longer wheel base) than a Yukon, that Darrell Jackson's navy blue Suburban had "some nice spoke wheels on it," but that he was not sure of the size, perhaps eighteen inches. (Tr. 16.) Mr. McGraw owns a blue Chevy Tahoe that has stock wheels and a standard truck license plate. Mr. McGraw also testified that, in advance of the evidentiary hearing, the Defendant wrote him a letter and talked to him over the jail telephone. (Tr. 13.)

2.      *The Testimony of Darrell Jackson*

The Defendant testified that trash collection in April 2008 occurred on Thursday

mornings, with the truck going down the alley first and then up the street in front of the houses. The trash collector told him that if he has his trash out before 9:00 a.m., it would be picked up. He testified that his routine was to take the trash out around 8:30 a.m. after he returned from taking four children to school and then he would go back and get into bed. He also testified that he never put the trash out on Wednesday evening, the evening before the trash is picked up; that he kept the trash can next to the house; that he usually put the trash in front of the house at the curb for collection; and that he was never on vacation, never slept in, never was gone or otherwise unavailable on Thursdays, and never late.

The Defendant testified that his girlfriend and several children lived at his residence until the end of February or early in March, when they separated. He testified that his brother, Jerrico Jackson, moved in when Darrell Jackson and his girlfriend were still together. He also testified that he was not employed in March and April 2008.

The Defendant owns a blue 1997 GMC Suburban and a maroon 1997 Chevy Suburban. The Defendant testified that Defendant's Exhibit A is the Certificate of Title to his 1997 GMC Suburban. Defendant's Exhibit A indicates that Darrell Jackson is the owner of a 1997 GMC K1500 Suburban, which was purchased on February 12, 2008. The Defendant denied owning a 1997 GMC Yukon. He testified as follows regarding the difference in body styles between the Suburban and the Yukon: "Mine is a little longer, it's longer, kind of like—alike, but they are not similar because mine is longer, 1500 body style." (Tr. 25.) The Defendant testified that the sport utility vehicle made by GMC that is not quite as long as the Suburban is the Yukon and that his navy blue Suburban has large 22-inch rims. He testified that his blue Suburban had an environmental plate on it, but he could not recall the specific license plate number. The

Defendant testified that Government's Exhibit 1 is the Indiana Bureau of Motor Vehicles Receipt for the license on his blue GMC Suburban and that is correctly reflects the license plate number. The Receipt indicates a transaction date of February 13, 2008. He testified that Government's Exhibit 2 is the Certificate of Title to his maroon 1997 Chevy Suburban. The Defendant added that his neighbor owns a Chevy Tahoe, which has a similar body style to a Yukon.

The Defendant testified that he has a brother named Jerrico Jackson who lived with him at the Esmond Street residence in 2008 from the middle of February to the end of February or early March, but that his brother was not living with him in April 2008 because he was in prison. (Tr. 27–28.) He also testified that his brother transferred his electronic monitoring/home detention from the Defendant's house to another residence around the end of February.

The Defendant testified that he had been arrested for dealing cocaine in 2005. He also testified that, in that federal case, he filed a motion to suppress, that a hearing was conducted, that the Defendant called a witness to testify for him, that the Court granted his motion to suppress and dismissed the case, and that he had been carrying crack cocaine in his pocket (although he took issue with his conduct in that case involving "transporting crack cocaine." (Tr. 44.) He also testified that he has been convicted of possession of cocaine, pointing a firearm, twice for felony intimidation, and false informing. He testified that he was arrested on other charges, but that the other charges were dismissed or he was found not guilty.

The Defendant testified that, in advance of the evidentiary hearing, he wrote Mr. McGraw a letter and talked to him over the jail telephone. (Tr. 48.)

### 3.     *The Testimony of Detective Earl McDonald*

Detective McDonald testified that he has been employed by the Allen County Police Department for about thirty-eight years and assigned to the Drug Task Force for about eighteen years. During his time on the force, he has received regular and extensive training in narcotics. He has also received training on the law governing trash searches, including the more restrictive requirements under Indiana law, which mandates that the police have information that about a person's criminal activity or potential criminal activity before the police can pick up the trash, that the police be quiet while collecting trash, that the police collect trash from the place where it is normally put on a normal collection day, that the police cannot infringe upon the property, and that the police collection has to be done on the days when the trash is normally picked up. He also has extensive experience with trash searches, which includes collecting trash "usually" three nights a week for years. (Tr. 51.) He testified that when he picks up trash, he adheres to Indiana law "[w]ithout fail." (Tr. 52.) The police have obtained from the trash collection companies a schedule for trash collection around the city.

Detective McDonald testified that he and Detective Cain picked up trash from the Esmond Street residence at approximately 2:45 a.m. on April 10, 2008. Other attempts had been made to collect trash from that residence, but because of noise, the presence of people, or lights being on, the detectives passed on the opportunities. Virtually every time, the trash was placed between the sidewalk and the curb in the grassy area, which the detective marked with an "X" on Government's Exhibit 3. Occasionally, he saw the trash can from the residence to the west of Darrell Jackson's residence on Esmond Street located next to the Defendant's trash can. He testified that he and Detective Cain collected a black plastic bag and a small white plastic bag on

the morning of April 10, 2008. The black plastic bag contained about forty plastic sandwich bags and one plastic sandwich bag that contained a rock-like substance that field tested positive for cocaine. They found another thirty-one plastic bags with corners cut off and five additional bags with white residue inside that field tested positive for cocaine. They also found another plastic sandwich bag containing five single-edged razor blades, and several blades field tested positive for cocaine. The trash included mail addressed to Darrell Jackson's Esmond Street residence and a green plant substance that tested positive for marijuana. It also contained an April 4 receipt for a cash purchase of handgun ammunition from H & H Firearms.

Detective McDonald testified that the location of the Esmond Street residence permitted drive-by surveillance because it was close to and visible from Clinton Street. He frequently saw the GMC Suburban, which is "very similar" to a Yukon, parked in front or in back, and it had large chrome wheels on it. (Tr. 59–60.)

4.    *The Testimony of Detective Jack Cain*

Detective Cain testified that he has been employed by the Allen County Police Department for more than thirteen and a half years and assigned to the Drug Task Force for eight and a half years. He has been trained regarding the law, narcotics, trash searches, and the more restrictive search and seizure requirements of Indiana law. He testified that, in conducting trash searches, he follows the procedure required by Indiana law, and that he has conducted hundreds of trash searches. He testified that he performed a trash search with Detective McDonald at Darrell Jackson's Esmond Street address on April 10, 2008, at approximately 2:45 a.m. The trash can had been put out for collection on the little strip of grass right next to the curb. Another can

from the neighboring residence was next to it. He had previously tried to collect trash from that residence, but because of activity in the area, he passed on those opportunities.

Detective Cain testified that Government's Exhibit 4 is the Search Warrant Affidavit and Search Warrant at issue in this case. He testified that the Search Warrant Affidavit summarized the items removed from Darrell Jackson's trash. He also testified that the Spillman Computer System lists arrests but not whether there were convictions or dismissals as to those arrests. The search Detective Cain ran indicated the Defendant's arrests, and thus the Search Warrant Affidavit indicates that arrests were made, but not the dispositions of those cases.

Detective Cain testified that he had observed the blue truck owned by Darrell Jackson parked in front of the residence on the street and behind the residence off the alley. The vehicle was visible as Detective Cain drove down Clinton Street. He could see the back end of the vehicle, the chrome rims, and the environmental license plate. Detective Cain testified to the specific license plate number on the truck. When Detective Cain drove down Clinton Street to the Allen County Service Center to put gasoline in his police vehicle, he would look at Darrell Jackson's house. Detective Cain testified that he ran a search of the environmental license plate on the navy-blue Suburban and that Government's Exhibit 5, which identifies the vehicle as a blue 1997 GMC Suburban and the specific license plate number, depicts the kind of information that he would receive when he ran the plate.

Detective Cain testified that while conducting surveillance on April 8, 2008, he saw Jerrico Jackson "in front of the residence in the street, leaning into the vehicle of a SUV like he was talking to somebody or doing something with somebody in that vehicle." (Tr. 70.) The vehicle was not either of the Defendant's Suburbans. Detective Cain was familiar with Jerrico

Jackson from a previous narcotic investigation.

He also testified that he recognized the voice of the anonymous person who called on March 3, 2008, because the person had called in before about other criminal activity. Although he did not know the person's identify, he had experience with this caller because this person had been calling Detective Cain "once a month, occasionally every two weeks for the last three or four years. The[ person is] very in touch with what's going on in the criminal community . . . ." (Tr. 75.) Detective Cain testified that this person would "just tell me stuff. Or if there's something going on that maybe I've heard, I want to verify, I might throw out to them [sic] that, oh, I heard that Mr. Campbell got a new Escalade, you hear anything like that? And [the person will] usually call me back the next time with an answer." (Tr. 76.) These conversations are "usually very short. Um, and like I said, they're not always about narcotics. Sometimes they're about homicides, sometimes they're about robberies. And then I take that information and pass it on [to] the appropriate detective." (Tr. 76.). He testified: "I think I've been able to verify more of the narcotics stuff, probably 80 percent, 90 percent. Now, on some of the homicides and stuff, it's—it sounded to me like the information was kind of street hearsay. And I've passed that onto the Fort Wayne Police Department. And I'm not sure on their end if any of that panned out." (Tr. 76.) He testified that the information from this person, along with other information developed through investigation, has resulted in the seizure of illegal narcotics three or four times over the past three or four years. This person would provide "a tidbit of information," and then Detective Cain would conduct further investigation. Although the information aided police investigations, Detective Cain testified that there was no instance when information from this person was the only information he had that led to a stop or seizure of drugs, and that the last

time (before the Defendant's case) he made a seizure of illegal drugs based upon the information

from this person as part of the investigation was possibly in 2005. Detective Cain testified that

this individual did not provide any time frame for when this anonymous individual was present

at Darrell Jackson's residence. Detective Cain also testified that the person had provided

information in instances other than those in which drug seizures or drug arrests were made.

However, because of the priorities of the Drug Task Force, Detective Cain may not have

conducted further investigation based upon the anonymous informant's information. He testified

that it was not uncommon for such callers to want to remain anonymous because of the threat of

intimidation and that, in these situations, he would commonly take the information, verify it, and

try to build a case on it.

Detective Cain testified that he was familiar with Jerrico Jackson and saw him outside

Darrell Jackson's residence on April 8, 2008, when Jerrico was leaning into the window of a

sport utility vehicle. In his experience, Detective Cain had been involved in narcotics

investigations in which a person standing outside a vehicle was handing narcotics to another

person through the window in a similar fashion. Detective Cain testified that he was astounded

that Jerrico Jackson was out of prison already.


**5.**     ***The Rebuttal Testimony of Darrell Jackson***

The Defendant testified that the house to the west of his was not lived in, but that he

would see the realtor who was trying to sell the house there. He also testified that he had seen the

realtor (initially referred to by the Defendant as "*the guy*" with the pronouns "*[he]*" and "*him*")

do some yard work, mow the lawn, take some debris off the yard, and put out the trash, but he

testified that he did not see the realtor put the trash can out in April of 2008. (Tr. 84–86 (emphasis added).) In answer to the question whether he had seen the realtor put the trash out, he answered, "Of course," and he emphasized that he knows that "it wasn't in April." (Tr. 86.) He added that "[t]his is what I'm talking about prior to trash being put out, was a long time ago basically what I'm saying" and that he had "only seen it out one time." (Tr. 86–87.) He then testified that he had "seen *her* [the realtor] a couple of times, but not a lot." (Tr. 87 (emphasis added).)

### E.     The Parties' Stipulation

On October 28, 2008, the parties filed a Stipulation [DE 33] regarding the following relevant facts: Jerrico Jackson was sentenced on December 23, 2003, for dealing in cocaine or narcotic drug; on December 20, 2007, Jerrico Jackson was assigned to the Community Transition Program; on February 8, 2008, Jerrico Jackson was returned to the Department of Corrections for violating the terms and conditions of the re-entry program; on April 4, 2008, Jerrico Jackson was released from the Department of Corrections to parole supervision; on April 9, 2008, Jerrico Jackson had his initial visit with his parole officer; and on April 10, 2008, his parole officer performed an initial home visit at his new residence on Foxpoint Trail in Fort Wayne, Indiana, and determined that the home was appropriate for parole supervision.

### F.     The Defendant's Brief in Support

In his post-hearing Brief in Support [DE 35], the Defendant focuses on the information provided by the anonymous telephone caller and on corroboration of that information through

the search performed on the trash. The Defendant urges that the credibility and reliability of the informant was misrepresented to the judge who issued the Search Warrant and that the omission of information garnered at the evidentiary hearing is material and significant to an assessment of the reliability of the informant and the information contained in the Search Warrant Affidavit. The Defendant contests the statement in the Search Warrant Affidavit that the garbage can was along the edge of the street when the police collected the trash. He contends, instead, that the trash can that night was located close to the house where he had a reasonable expectation of privacy and that the trash search was illegal and, therefore, could not serve as a basis for probable cause to support the issuance of the Search Warrant.

### G.    The Government's Response

The Government argues that Detectives McDonald and Cain were credible and truthful regarding the location of the trash can, that they lawfully obtained the Defendant's trash, and that the Search Warrant was appropriately issued. The Government also urges that, in performing the trash search, the detectives complied with the more restrictive search and seizure requirements of Indiana law, that the Defendant has credibility issues, and that the central evidence in the Search Warrant Affidavit that established probable cause is the independent investigation and completely independent evidence discovered in the Defendant's trash, not the information provided by the informant. Additionally, the Government contends that the information the informant provided (whether as an anonymous informant or a known confidential informant) was corroborated through independent observation of the police. Finally, the Government argues that the Defendant has not shown that Detective Cain knowingly and intentionally, or with reckless

disregard for the truth, made a false statement in (or omitted statements from) the Search

Warrant Affidavit, or that the remainder of the Search Warrant Affidavit would not establish

probable cause without the false statement.

## H.    The Defendant's Reply

In his Reply [DE 37], the Defendant contests the Government's portrayal of some of the

evidence. The Defendant argues that his testimony and the testimony of his neighbor, LeRoy

McGraw, are credible and that the trash collected by the police was not from a location at the

curb but rather from the trash can located beside the house. Thus, the Defendant urges that the

information provided by the anonymous caller was not corroborated and that the Search Warrant

was improperly granted.

## ANALYSIS

## A.    The Franks Hearing Issue

Under *Franks v. Delaware*, there is a presumption of validity with respect to the affidavit

supporting the search warrant. *Id.*, 438 U.S. 154, 171 (1978). A defendant challenging the

veracity of an affidavit is entitled to an evidentiary hearing if (1) he can make a substantial

preliminary showing that the affidavit supporting the warrant application was intentionally or

recklessly false, or that the affiant intentionally or recklessly omitted material information, and

(2) the false statement or omission "is necessary to the finding of probable cause." *Id.* at 155–56;

*United States v. Robinson*, 546 F.3d 884, 887–88 (7th Cir. 2008); *United States v. Hoffman*, 519

F.3d 672, 675 (7th Cir. 2008). The Seventh Circuit has held that an affiant acts with reckless

disregard for the truth when he "'in fact entertained serious doubts as to the truth of his allegations.'" *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008) (quoting *United States v. A Residence Located at 218 Third Street, New Larus, Wis.*, 805 F.2d 256, 258 (7th Cir. 1986)). Additionally, "[a] defendant faces a difficult burden in establishing these elements. His allegations must be more than conclusory, supported by more than a mere desire to cross-examine, and accompanied by a specific offer of proof." *United States v. Marshall*, 259 Fed. Appx. 855, 859 (7th Cir. 2008) (citing *Franks*, 438 U.S. at 171).

Giving the Defendant's submissions a reading favorable to the Defendant, it appears that he alleges the following false statements or omissions: statements and omissions regarding matters relative to the anonymous informant's credibility and reliability; omissions related to the disposition of cases in which the Defendant was arrested; and statements regarding the trash search. The Court, in this case, conducted an evidentiary hearing on the Defendant's Motion to Suppress, and the Defendant had the opportunity to put on evidence and to cross-examine Detective Cain, the affiant in the Search Warrant Affidavit. Notwithstanding the Defendant's attacks on the Search Warrant Affidavit, he has presented nothing that would provide insight into Detective Cain's state of mind to show that his statements or any omissions were made either intentionally or recklessly (that is, with deliberate or reckless disregard for the truth).

As to the informant's credibility and reliability, the Search Warrant Affidavit states: "Detective Cain recognized the voice of the individual as someone [who] has proven to be credible and reliable and has provide information and/or assisted the Drug Task Force in the past that had resulted in the seizure of illegal narcotics and the arrest of individuals for drug related crimes." (Govt Ex. 4.) The Defendant has not shown that this statement is false; indeed, it is

wholly consistent with Detective Cain's testimony at the evidentiary hearing. Defendant Cain testified that he recognized the voice of the anonymous caller, who had been calling Detective Cain "once a month, occasionally every two weeks for the last three or four years. They [sic] are very in touch with what's going on in the criminal community . . . ." (Tr. 75.) He also testified: "I think I've been able to verify more of the narcotics stuff, probably 80 percent, 90 percent. Now, on some of the homicides and stuff, it's—it sounded to me like the information was kind of street hearsay. And I've passed that onto the Fort Wayne Police Department. And I'm not sure on their end if any of that panned out." (Tr. 76.) Additionally, he testified that the information from this person, along with other information developed through investigation, has resulted in the seizure of illegal narcotics three or four times over the past three or four years. Detective Cain also testified that the person had provided information in criminal cases other than those in which drug seizures or drug arrests were made.

Even if the examination and cross-examination of Detective Cain did not elicit testimony that covers every part of the statement in the Search Warrant Affidavit about the informant's credibility and reliability, the Defendant has the burden to make a showing of intentional or reckless statements or omissions without regard for the truth, he has failed to do this as to the credibility and reliability of the informant, and minor errors in an affidavit do not necessarily invalidate a search warrant. *See United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) (use of the phrase "concerned citizen" once in an attachment to the affidavit to describe a confidential source did not negate probable cause finding); *Zambrella v. United States*, 327 F.3d 634, 639 (7th Cir. 2003) (affirming district court's ruling that search warrant was proper when factual mistakes in affidavit regarding date of phone call and name of officer "were, at worst, the result

of mere negligence" and defendant fell "far short of establishing . . . a reckless disregard for the truth, much less . . . knowingly or intentionally [making] a false statement); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) (arguments based on a typographical error of one number in an address in the affidavit "are specious at best"); *United States v. Cruz*, 603 F.2d 673, 675 (7th Cir. 1979) (misidentification of a person in a search warrant affidavit for a drug case "was understandable under the circumstances and was not material to the determination of probable cause"). Furthermore, as discussed further in this Opinion and Order below, the information provided by the informant was corroborated at several different levels.

As to any alleged omissions related to the disposition of cases in which the Defendant was arrested, the statement in the Search Warrant Affidavit (i.e., that Darrell Jackson "had been arrested in the past for dealing cocaine, possession of cocaine, pointing a firearm, intimidation, criminal confinement, and auto theft, and has an alert code for 'transportation of crack cocaine'" (Search Warrant Aff. 1, Gov't Ex. 4)) was accurate, and any omission related to the final disposition (whether conviction, acquittal, or dismissal) of the cases in which the Defendant was arrested was not material.

As to Detective Cain's statements regarding the trash search, the Defendant undertakes to create a factual dispute regarding where his trash can was located when the detectives collected his trash, which they searched. As discussed at greater length in this Opinion and Order below, the Court finds the detectives' testimony credible and of substantial weight, Mr. McGraw's testimony of less credibility and less weight, and the Defendant's testimony not credible. For this reason, the Defendant has not shown any false statement or omission evidencing a disregard for the truth.

For these reasons, the Court finds that the Defendant has not shown that Detective Cain (the affiant) made false statements (or failed to include material facts) intentionally or recklessly in the Search Warrant Affidavit without regard for the truth.

**B.      The Standard for Suppressing Evidence Obtained from the Execution of a Search Warrant**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This means in part that police may only search a person's home "if there is probable cause to believe that the authorities will recover the items subject to seizure at the time they execute the warrant." *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005).

The "central teaching of [Supreme Court] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). For this reason,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay

> information, there is a fair probability that contraband or evidence of a crime will
> be found in a particular place.

*Gates*, 462 U.S. at 238. "In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997). For example, in issuing a warrant, a judge may infer that evidence of drug dealing is likely to be found where a dealer lives. *Id.* "[W]hen observing activity of a person suspected of criminal activity, Government agents are entitled to reasonably rely upon their special knowledge and expertise to assess probabilities and draw inferences," *United States v. Marin*, 761 F.2d 426, 432 (7th Cir. 1985), and a judge may take into account the experience and special knowledge of officers if the search warrant affidavit explains the significance of specific types of information, *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991).

"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238–39 (quotation marks, brackets, and ellipsis omitted). "A magistrate's determination of probable cause '. . . should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the placed indicated.'" *Newsom*, 402 F.3d at 782 (quoting *United States v.*

23

*Spry*, 190 F.3d 829, 835 (7th Cir. 1999)).

"If the search or seizure was effected pursuant to a warrant, the defendant bears the burden of proving its illegality . . . ." *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985). "When, as here, the affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (quoting *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). The Seventh Circuit has made clear that probable cause affidavits are to be "read as a whole in a realistic and common sense manner." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000) (quoting *Spry*, 190 F.3d at 835).

**C.      The Trash Search**

In seeking suppression of the evidence seized in this case and attacking the Search Warrant Affidavit, the Defendant focuses initially upon the information provided by the informant who called Detective Cain and then upon the trash search as one of the Government's means of attempting to corroborate the information supplied by informant. The trash search, however, could provide an independent evidentiary basis for the probable cause finding, and thus the Court will address the issue of the trash search before the issue of the informant's information.

The parties basically agree on the law governing trash searches. If the police seized trash out of a trash can adjacent to Darrell Jackson's home as to which he had a reasonable expectation of privacy (which is Jackson's version of events), then the police likely violated his Fourth Amendment rights, but if the police seized the trash out of a trash can left for pickup at

the curb or at the edge of the street (which is the officers' version of events), then there was no constitutional violation because there is no reasonable expectation of privacy in the trash, and the evidence need not be suppressed. *See California v. Greenwood,* 486 U.S. 35, 37 (1988) (holding that the warrantless search and seizure of garbage left for collection outside the curtilage of a home is not prohibited by the Fourth Amendment); *United States v. Redmon*, 138 F.3d 1109, 1114 (7th Cir. 1998) (finding that a defendant does not have a reasonable expectation of privacy when the defendant has abandoned garbage by moving it out of his garage and placing it for collection); *United States v. Shanks,* 97 F.3d 977, 979-80 (7th Cir. 1996) (holding that when garbage containers are readily accessible and visible from a public thoroughfare (e.g., an alley) and when it is common for scavengers to snoop through garbage cans found in such alleys, then the defendant could harbor no reasonable expectation of privacy because the garbage was essentially exposed to the public).

Having conducted the evidentiary hearing, heard the testimony, studied the exhibits, observed the demeanor of the witnesses, and considered corroboration and the interests, frankness, and candor of the witnesses, the Court finds the testimony of Detectives McDonald and Cain more credible than the testimony of Mr. McGraw and the Defendant. The testimony of the detectives was credible, detailed, and consistent, and it is corroborated both other evidence such as the Defendant's testimony regarding the realtor's placing of the trash of the adjacent house out for collection. Mr. McGraw's testimony has diminished weight because, according to his testimony, he was not watching what the Defendant was doing and not prying into the Defendant's life and because "most of the time" his boys would take out the trash on Wednesday night and he would not be "out there on Thursday morning for the trash pick." (Tr. 11.) Even so,

Mr. McGraw did testify that "*most of the time*" "Darrell *usually* brings his out on Thursday morning right before because he be up." (Tr. 12–13 (emphasis added).) As for the Defendant, his testimony shifted as examination continued, especially as to the trash placed out by the realtor at the neighboring house, and his recollection of the time frame during which his brother lived with him and was out of prison was faulty. Additionally, his prior false informing conviction raises substantial questions regarding his credibility.

The Court finds the testimony of the detectives to be of substantial weight in showing that, on the morning of April 10, 2008, at approximately 2:45, the Defendant's trash can was awaiting collection at the location next to the curb in front of the house. As a consequence, the Defendant had no reasonable expectation of privacy in the trash placed at the curb for collection, and the detectives lawfully collected the Defendant's trash from his trash can. Thus, the trash search in this case was valid and lawful, and it provided a basis for the state judge's finding of probable cause to issue the Search Warrant.

**D.     The Informant's Information**

When an informant provides information for a probable cause affidavit, courts "determine the legitimacy of the probable cause finding by assessing the informant's 'reliability, veracity and basis of knowledge.'" *United States v. Taylor*, 471 F.3d 832, 839 (7th Cir. 2006) (quoting *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005)). The Seventh Circuit has instructed:

> Where probable cause is based on information supplied by an informant, courts consider the following factors: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the

interval between the date of the events and the police officer's application for the search warrant."

*United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007) (quoting *Koerth*, 312 F.3d at 866). Courts also consider whether the informant testified at a probable cause hearing. *Taylor*, 471 F.3d at 839. "No one factor is dispositive, however. Each is simply a relevant consideration in the totality of the circumstances analysis." *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).

In this case, police corroboration of the informant's information is extensive. The detectives checked state records to confirm the Defendant's address and confirmed a criminal arrest record that includes dealing cocaine, possession of cocaine, and pointing a firearm. The police conducted surveillance and observed in front of the Defendant's residence a blue 1997 GMC sport utility vehicle with large chrome rims. They confirmed that this vehicle was registered to the Defendant. The information provided by the informant on April 9, 2008, that the Defendant's brother had recently been released from prison was consistent with what Detective Cain had observed while conducting surveillance at the Esmond Street address on April 8, 2008. The trash search also corroborated the information provided by the informant, including information related to the dealing of crack and powder cocaine and the presence of guns at the Esmond Street address. Additionally, the informant acquired information of events through firsthand observation by visiting the Defendant's residence several times, witnessing the Defendant dealing crack and powder cocaine, and hearing the Defendant mention buying half of a kilogram in the past. The informant also provided detailed information, including the Defendant's unemployment, the approximate amount the Defendant deals weekly, the safe in the Defendant's residence hiding money and guns, the Defendant's recent purchase of the blue GMC

sport utility vehicle with distinctive rims, the recent split between the Defendant and his girlfriend, and the recent release of the Defendant's brother from prison and his presence at the Esmond Street residence. Also, the interval between the events witnessed by the informant and Detective Cain's application is relatively short. The first call referenced in the April 10, 2008, Search Warrant Affidavit occurred on March 3, 2008, and the second call occurred on April 9, 2008. Thus, the first call came thirty-eight days before Detective Cain's application for the Search Warrant, and the second call came one day before his application.

In conclusion, the factors for assessing an informant's information weigh in favor of finding that the informant's "reliability, veracity and basis of knowledge," *Taylor*, 471 F.3d at 839, were sufficient for the state judge to find there was probable cause to issue the Search Warrant in light of all the circumstances of the case.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress Evidence [DE 19] is DENIED. This matter is now set for a telephonic status conference on Thursday, March 5, 2009, at 11:00 a.m. The Court will initiate the call.

SO ORDERED on February 27, 2009.

       s/ Theresa L. Springmann      
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT