# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

UNTIED STATES OF AMERICA       )
                                       )

v.                            )       CAUSE NO.: 1:08-CR-38-TLS
                                       )                  1:10-CV-237-TLS

DARRELL F. JACKSON            )

## OPINION AND ORDER

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 70], filed on July 19, 2010,

by the Defendant, Darrell F. Jackson, who is now proceeding pro se. The Defendant has

identified the following three grounds for his claim to relief: (1) ineffective assistance of counsel

at sentencing; (2) ineffective assistance of counsel on direct appeal; and (3) imposition of the

career offender enhancement. For the reasons set forth in this Opinion and Order, the

Defendant's Motion will be denied, and no certificate of appealability will issue pursuant to 28

U.S.C. § 2253(c)(2).

## PROCEDURAL BACKGROUND

After receiving a tip that the Defendant was dealing crack and powder cocaine from his

home and after conducting a trash pickup from the front of the Defendant's home that yielded a

crack cocaine rock, plastic baggies, razor blades with cocaine residue, and a receipt for the

purchase of ammunition, the police obtained a search warrant and searched Defendant's home.

This search resulted in the recovery of approximately 23 grams of crack cocaine. The Defendant

was charged initially by way of a Criminal Complaint [ECF No. 1] with possessing with intent to

distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and then by an Indictment [ECF

No. 11] with possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 1) and possessing a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (Count 2). The Defendant filed a Motion to Suppress Evidence [ECF No. 19] that the Court later denied [ECF No. 38]. The Defendant subsequently entered into a Plea Agreement [ECF No. 45] with the Government, in which he agreed to plead guilty to Count 1 and reserved his right to challenge the Court's Opinion and Order denying his Motion to Suppress Evidence. The Court conducted a change of plea hearing during which the Court accepted the Defendant's plea of guilty as to Count 1.

In advance of sentencing, the Defendant filed a Sentencing Brief [ECF No. 50] objecting to the recommendation in the Presentence Investigation Report (the PSR or the Report) that the Defendant receive a career offender enhancement pursuant to United States Sentencing Guideline § 4B1.1, based upon the Defendant's separate convictions for intimidation (a class D felony in Cause Number 02D04-9606-DF-317, and a class C felony in Cause Number 02D04-9611-CF-516, both in Allen County Superior Court, Indiana). The Government filed a Response [ECF No. 54] arguing that the career offender enhancement was warranted. The Court issued a Sentencing Memorandum [ECF No. 55] finding that the Defendant had previously been convicted of at least two felony crimes of violence under the Sentencing Guidelines and overruling the Defendant's objection to the career offender enhancement. At the sentencing hearing, the Court accepted the Plea Agreement, granted the Government's oral motion to dismiss Count 2, and sentenced the Defendant to 188 months of imprisonment and 4 years of supervised release.

The Defendant then filed a Notice of Appeal challenging this Court's denial of his

Motion to Suppress Evidence and this Court's judgment of conviction. The Seventh Circuit subsequently affirmed the judgment of this Court. Attorney Stanley L. Campbell represented the Defendant from his initial appearance through his sentencing and appeal.

On July 19, 2010, the Defendant filed a timely, pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 70] and a Supplemental Brief and Memorandum of Points and Authorities in Support [ECF No. 71]. Mr. Campbell's appearance on behalf of the Defendant was withdrawn on July 30, 2010. On August 18, the Government filed a Response to Motion Under 28 U.S.C. § 2255 [ECF No. 79]. On October 5, the Government filed a Supplemental Response [ECF No. 82]. On October 8, the Defendant filed a Reply to Government Opposition [ECF No. 83], and on March 28, 2011, the Defendant resubmitted his Reply [ECF No. 84] and filed a Supplemental Brief [ECF No. 85].

## RELEVANT PLEA AGREEMENT TERMS AND CHANGE OF PLEA COLLOQUY

The Defendant and the Government entered into a written Plea Agreement [ECF No. 45] that was filed with this Court on April 15, 2009. The Plea Agreement was signed by counsel for the Government, the Defendant, and counsel for the Defendant. Paragraph 1 of the Plea Agreement indicated that the Defendant has the ability to read, write, and speak the English language, and Paragraph 5 specified the rights the Defendant was waiving by pleading guilty to Count 1.

In Paragraph 8(b), the Defendant stated his understanding that the maximum possible penalty for a conviction on Count 1 is imprisonment of not less than 5 years and not more than 40 years. In Paragraph 8(d), the Defendant acknowledged that the Government could have filed a

sentencing enhancement pursuant to 21 U.S.C. § 851 based upon his prior felony drug offense

and that the advisory guideline range may under-represent the severity of his offense in light of

the potential effect of the enhancement. In Paragraph 8(d), the Defendant also agreed to the

following:

> Therefore, if necessary, I agree that I should receive an upward offense level
> adjustment or variance equal to the number of offense levels that are sufficient to
> contain a sentence of 100 months. *Unless I am a career offender* pursuant to
> U.S.S.G. § 4B1.1, the government and I agree that I should be sentenced to a term
> of imprisonment of 100 months. If I am a career offender at the time of
> sentencing, then I shall be sentenced according to the U.S.S.G. § 4B1.1, and I
> understand that the agreement for the sentence of 100 months shall **not** apply. If
> applicable, the above-mentioned agreement that I should receive a sentence of
> 100 months is a binding agreement pursuant to Rule 11(c)(1)(C).

(Emphasis in original.) In Paragraph 8(e), the Government agreed to dismiss Count 2 of the

Indictment. In Paragraph 8(f), the Defendant expressed his understanding that the law gives a

convicted person the right to appeal his conviction and the sentence imposed, that no one can

predict the precise sentence that will be imposed, and that the Court has jurisdiction and

authority to impose a sentence within the statutory maximum set for my offense as set forth in

the Plea Agreement. Paragraph 8(f) continued:

> [W]ith this understanding and in consideration of the government's entry into this
> plea agreement, I expressly waive my right to appeal (except as provided in
> paragraph 6 of this Plea Agreement) or to contest my conviction and my sentence
> and any restitution order imposed or the manner in which my conviction or my
> sentence or the restitution order was determined or imposed, to any Court on any
> ground, including any claim of ineffective assistance of counsel unless the
> claimed ineffective assistance of counsel relates directly to this waiver or its
> negotiation, including any appeal under Title 18, United State Code, Section 3742
> or any post-conviction proceeding, including but not limited to, a proceeding
> under Title 28, United States Code, Section 2255.

Paragraph 6 preserved the Defendant's right to challenge on appeal this Court's February 27,

2009, Opinion and Order denying his Motion to Suppress Evidence. In Paragraph 11, the

Defendant stated his belief that his lawyer had "done all that anyone could do to counsel and assist [him]" and that he understood the proceedings against him in his criminal case. In Paragraph 12, the Defendant declared that he offered his "plea of guilty freely and voluntarily and of [his] own accord," that "no promises ha[d] been made to [him] other than those contained in this agreement," and that he had not "been threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement."

At the Change of Plea Hearing conducted by the Court on April 20, 2009, the Court swore the Defendant and made detailed inquiry into his competence to plead, the voluntariness of his plea, and his understanding regarding specific terms of the Plea Agreement. The Defendant confirmed that no person had made any promises or assurances to him that were not in the Plea Agreement to persuade him to accept the Agreement. The Court found that the Defendant was fully competent and capable of entering an informed plea, that the Defendant was aware of the charges and the consequences of the plea, and that the plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The Court specifically inquired as to the binding terms of the Plea Agreement involving his agreement (if applicable) to be sentenced to a term of imprisonment of 100 months and the Government's agreement to dismiss Count 2 of the Indictment at the time of sentencing. The Court highlighted that the agreed term of imprisonment was conditioned upon the Court's determination regarding whether he is a career offender pursuant to Sentencing Guideline § 4B1.1. The Court also inquired regarding the Defendant's waiver of his right to appeal his conviction, sentence, and any restitution order imposed or the manner in which his conviction, sentence, or restitution order was determined or imposed (except as to the right he

preserved to seek appellate court review of the Court's February 27, 2009, Opinion and Order denying his Motion to Suppress Evidence), his waiver of his right to collaterally attack through a habeas corpus petition his conviction, sentence, or restitution order and the manner by which his conviction, sentence, or restitution order was imposed, and his waiver of his right to claim ineffective assistance of counsel (except as to ineffectiveness directly involving the appellate waiver or its negotiation). During the hearing colloquy, the Defendant affirmed his understanding of these terms and confirmed, after being advised of his rights and after the Court's discussion of  various terms of the Plea Agreement, that he still wanted to plead guilty.

## DISCUSSION

A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).

The Defendant contends that he is entitled to relief on the following three grounds: (1) his counsel provided ineffective assistance in advising him as to the Plea Agreement, which the

Defendant asserts benefitted only the Government and not him, and as to his sentencing; (2) his counsel provided ineffective assistance of counsel in only raising on appeal issues related to this Court's denial of his Motion to Suppress Evidence; and (3) this Court unlawfully imposed the career offender enhancement. The Defendant asks that the Court remove the career offender enhancement and resentence the Defendant to a term of 100 months. In the alternative, the Defendant asks that the Court grant him a new direct appeal without any limitation on the issues available for appeal or render his Plea Agreement void and return his case to a "pre-trial" status.

## A.     Evidentiary Hearing Request

The Defendant has requested that the Court conduct an evidentiary hearing to develop the record regarding the ineffective assistance claims he presents. A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court finds that the Defendant's Motion along with the files and records of this case conclusively show that the Defendant is entitled to no relief. Consequently, an evidentiary hearing is not warranted, and the Court denies his request.

## B.     Plea Agreement Waiver

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily

entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). Waiver of the right to appeal and the right to bring a collateral attack under § 2255 are subject to the same principles. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999); *see also Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000). Two claims can be raised in a § 2255 motion by a defendant who has expressly and unambiguously waived his right to collaterally attack his conviction and sentence: (1) the waiver was not knowingly and voluntarily made; or (2) counsel was ineffective in negotiating the waiver. *Jones*, 167 F.3d at 1145 (stating that "we reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver").

The Defendant's waivers of his right to appeal (except as to his challenge of this Court's ruling on his Motion to Suppress Evidence) and his right to collaterally attack his conviction and sentence are express and unambiguous, and the Defendant does not argue otherwise.[1] Paragraph 8(f) of the Plea Agreement memorialized the Defendant's understanding that he had a right to appeal the conviction and the sentence imposed, that no one could predict the precise sentence that the Court would impose, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offense, which was set forth in the Plea Agreement. Paragraph 8(f) then stated:

> [W]ith this understanding and in consideration of the government's entry into this

---

[1] The Defendant argues that the clause "[u]nless I am a career offender" in Paragraph 8(d) is vague. This clause is not vague, and its meaning is clear in the context of Paragraph 8(d), especially considering that the clause and Paragraph 8(d) also reference United States Sentencing Guideline § 4B1.1. Paragraph 8(d) also stated that "[i]f I am a career offender at the time of sentencing, then I shall be sentenced according to U.S.S.G. § 4B1.1, and I understand that the agreement for the sentence of 100 months shall **not** apply." In any event, the Defendant's argument does not render the waivers ambiguous.

plea agreement, I expressly waive my right to appeal (*except as provided in paragraph 6 of this Plea Agreement*) or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

These waivers were express and unambiguous with respect to the Defendant's direct appeal and his collateral attack under § 2255. Consequently, the Court will consider whether the Plea Agreement and the waivers were not knowingly and voluntarily made and whether counsel was ineffective in negotiating the waivers.

1.      ***Knowing and Voluntary Waivers***

In his Motion and his Supplemental Brief and Memorandum of Points and Authorities, the Defendant does not dispute the knowing and voluntary nature of his waiver. However, in his Reply, he asserts that the waivers were not knowingly and intelligently given. Additionally, his contention that his counsel misled him and promised that he was not a career offender may present a concern regarding whether the waivers were knowing and voluntary.

In determining whether a defendant knowingly and voluntarily entered into a plea agreement, a court examines the content and the language of the plea agreement and the plea colloquy between the defendant and the judge. *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997); *see also United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (observing that the district court must inform the defendant of an appellate waiver during the Rule 11 colloquy). When a sentencing court engages a defendant in a detailed colloquy pursuant to Federal Rule of

Criminal Procedure 11 and discusses with a defendant his rights and the consequences of his guilty plea, the testimony of the defendant at that hearing is accorded a "presumption of verity." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). *Cf. United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) (stating that a "defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, . . . faces 'a heavy burden of persuasion'") (quoting *Ellison*, 835 F.2d at 693). "[A] careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary," *United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002), and courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver, *United States v. Jemison,* 237 F.3d 911, 917 (7th Cir. 2001).

The Defendant has not undercut the validity of the waivers or shown that the waivers were not knowingly and voluntarily made. Throughout the written Plea Agreement, which the Defendant signed, the Defendant expressed his understanding of his rights and the various waivers contained in the Agreement. In Paragraph 11, the Defendant stated his belief that his "lawyer ha[d] done all that anyone could do to counsel and assist [him], and that [he] . . . underst[oo]d the proceedings in this case against [him]." In Paragraph 12, he declared that he "offer[ed] [his] plea of guilty freely and voluntarily and of [his] own accord," and that "no promises ha[d] been made to [him] other than those contained in this agreement, nor ha[d] [he] been threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement."

On April 20, 2009, the Court conducted a change of plea hearing, at which the Court engaged the Defendant in a detailed colloquy regarding the terms of the Plea Agreement, his

waiver of rights, the consequences of pleading guilty, and the knowing and voluntary entry of his guilty plea. Early in the hearing, the Defendant expressed his understanding that he could confer with counsel at any point in the proceeding and that it was very important that he understood each question of the Court before he answered. After swearing the Defendant, the Court inquired about his competence and found that he was able to understand the significance of the proceeding and was competent to continue with his change of plea. The Defendant attested that he had ample opportunity to discuss his case with counsel, that he was fully satisfied with counsel's representation and advice, that there were no terms in the Plea Agreement that he did not understand, that no one had made any promises or assurance to persuade him to accept the Plea Agreement that were not in the Plea Agreement, and that no one had threatened him to accept the Plea Agreement. The Defendant also stated that he was pleading guilty of his own free will.

During the colloquy, the Court engaged in an extensive dialogue with the Defendant regarding his understanding of specific terms of the Plea Agreement, including his waivers in Paragraph 8(f), and inquired multiple times with variously worded questions about his understanding of the terms. The Court asked the Defendant if he understood that, according to Paragraph 8(f) and except for a challenge on appeal to the Court's adverse ruling on his Motion to Suppress Evidence, he would have "no right to appeal [his] conviction, sentence, and any restitution order imposed, or the manner in which [his] conviction, sentence or any restitution order were determined or imposed," and that he would also be prohibited "from collaterally attacking through a habeas corpus petition [his] conviction, sentence, or restitution order, and the manner in which [his] conviction, sentence or restitution were imposed." (Hr'g Tr. 12.) The

Defendant answered, "Yes, I do." (*Id.*) The Court also inquired whether the Defendant understood that he was "agreeing to give up any right that [he] may have to claim the ineffective assistance of legal counsel, unless that claimed ineffectiveness relates directly to this appellate waiver or its negotiation." (*Id.*) The Defendant answered, "Yes, I do." (*Id.*) He also affirmed that he had no "question with regard to the terms of paragraph 8(f) or the waiver of appellate rights that are contained in that [paragraph]." (Hr'g Tr. 12–13.) Later in the plea colloquy, after asking the Defendant whether he understood that the Court would not be able to determine the advisory guideline sentence until after the PSR has been prepared, the Court again revisited the matter of the Defendant's waiver of his "right to appeal and collaterally attack all or part of the sentence." (Hr'g Tr. 18.) The Defendant affirmatively expressed that he understood those terms and confirmed his understanding that such waivers are generally valid and that he would likely be prevented from appealing his sentence or challenging it through a habeas corpus petition. (Hr'g Tr. 18.) The Court also again inquired whether he understood that, in Paragraph 8(f), he was agreeing to "give up any right [he] may have to claim ineffective assistance of legal counsel, unless that claim relates directly to this appellate waiver or its negotiation," (Hr'g Tr. 18–19), and he affirmed his understanding. After being advised of his various rights and indicating that he had no questions, the Defendant stated that he still wanted to plead guilty. During the hearing, the Court determined that the Defendant's plea was knowingly and voluntarily made.

The Defendant has not pointed to any deficiency in the Court's Rule 11 colloquy. Considering the Plea Agreement, the April 20, 2009, change of plea hearing, and the materials before the Court, the Court concludes that the Plea Agreement and the waivers were knowingly and voluntarily made. Consequently, the Defendant's express and unambiguous waivers of his

right to appeal and to attack his conviction and sentence collaterally should be enforced and foreclose all claims that do not directly relate to counsel's performance with respect to the negotiation of the appellate and collateral attack waivers.

## 2. *Ineffectiveness in Waiver Negotiation*

In his submissions, the Defendant presents the following complaints: the Plea Agreement was deceptively written to include the career offender enhancement; the Plea Agreement essentially guaranteed that a career offender enhancement would be imposed; Attorney Campbell assured him that he did not meet the criteria of a career offender and that Paragraph 8(d) of the Plea Agreement was no threat and of no concern; if counsel had not promised him that he was not a career offender for the purposes of a sentence enhancement, he would not have taken the Plea Agreement; Attorney Campbell should have kept him from accepting the Plea Agreement until the terms of his sentence were clearly spelled out and the career offender enhancement issue resolved; he was prejudiced by being classified as a career offender and being sentenced to 188 months of imprisonment instead of the 100 months he believed he was to receive under the Plea Agreement; and Attorney Campbell appealed only this Court's denial of the Defendant's Motion to Suppress Evidence and not the career offender enhancement.[2] Most of these claims are

---

[2] The Defendant states that although the sentencing judge holds the final decision, "the judge will not determine that a [career offender] enhancement is required if not presented with that option by the government." (ECF No. 71 at 4.) The Defendant's argument reflects a misunderstanding.

Under 21 U.S.C. § 851(a)(1), the Government may seek an increased sentence by reason of one or more prior convictions but only if the United States attorney files an information with the court before trial or entry of a plea of guilty. The § 851 enhancement requirements "apply when the government seeks to enhance the maximum penalty under the recidivist provisions of that statute." *United States v. Spence*, 450 F.3d 691, 695 (7th Cir. 2006) (quotation marks and citations omitted). The Defendant pled guilty to a violation of 21 U.S.C. § 841(a)(1). In Paragraph 8(d) of the Plea Agreement, the Defendant acknowledged that he had previously been "convicted of a prior felony drug offense and that the

barred by the waivers in his Plea Agreement as they do not relate directly to the negotiation of the Plea Agreement. However, the Court will generously construe and reframe the Defendant's contentions so as to present the following claims: (1) Attorney Campbell's assistance was ineffective in that counsel gave him material misinformation upon which he relied in determining not merely to enter a plea of guilty to the charges, but also to agree to the waiver of his appeal rights and his rights to challenge his conviction and sentence collaterally; and (2) Attorney Campbell's assistance was ineffective in that he failed to preserve the Defendant's right to appeal the career offender enhancement in negotiating the appellate and collateral attack

_____

government could have filed an enhancement under 21 U.S.C. § 851." Consistent with the Plea Agreement, the Government did not seek that statutory enhancement. However, the § 851 enhancement requirements do "not apply when the district court sentences a defendant under the guidelines to an increased sentence within the statutory range," *Spence*, 450 F.3d at 695, which is what occurred in the Defendant's case. Additionally, in its Response, the Government addressed the benefits the Defendant received under the Plea Agreement and the potential impact of a § 851 sentence enhancement in the following summation:

> With Jackson's prior felony drug conviction, Jackson was potentially facing a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment, and if he had gone to trial and had been convicted on the drug count, he would have faced a sentence of 360 months to life as a career offender. Pursuant to the plea agreement, the government withheld the sentencing enhancement, which accorded Jackson a mandatory minimum sentence of 5 years and a maximum sentence of 40 years. The lowering of his maximum sentence thereby benefitted him substantially by reducing his base offense level by three levels under the career offender guideline, U.S.S.G. § 4B1.1(b). Jackson also received other benefits in the plea agreement, including reductions for acceptance of responsibility, the dismissal of Count 2, a stipulation to the drug quantity, a contingent agreement on a possible binding sentence if he was not a career offender, and the opportunity to appeal his suppression issues. Rather than 360 months to life, Jackson ultimately faced a guideline range of 188 months to 235 months imprisonment under the plea agreement.

(ECF No. 79 at 9–10.) Furthermore, the application of the career offender enhancement under Sentencing Guideline § 4B1.1 is determined by the Court based upon the evidence of the Defendant's criminal history gathered by the United States Probation Office and presented in the PSR.

Although the Defendant takes issue with defense counsel's representation on appeal for failing to challenge this Court's career offender enhancement determination, the Seventh Circuit has held that, to render effective assistance, an attorney is not required to litigate claims in contravention of a valid waiver of a right to appeal. *Nunez v. United States,* 546 F.3d 450, 455–56 (7th Cir. 2008). Additionally, a lawyer has a duty to avoid frivolous litigation and a duty to avoid taking steps that might cost his client the benefits in a plea bargain. *Id.* at 455.

waivers.[3] *See Jones,* 167 F.3d at 1145 (stating that "[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a [plea] agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness"). The Court will consider these two claims of ineffective assistance.

To establish an ineffective assistance of counsel claim, a defendant must provide evidence that his attorney's performance fell below an objective standard of reasonableness (the "performance" prong) and that counsel's deficiencies prejudiced his defense (the "prejudice" prong). *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984); *see also Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (ruling that "to demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty"). "This test is 'highly deferential' to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2006) (quoting *United States v. Scanga*, 225 F.3d 780, 783–84 (7th Cir. 2000)).

a.      *Material Misrepresentation Regarding Plea and Sentencing*

Under Seventh Circuit precedent, "an attorney's 'mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel

---

[3] In his Reply, the Defendant contends that the deceptive text "[u]nless I am a career offender" relates to the negotiation of the agreement. However, the language of the Defendant's Plea Agreement that creates an exception to the waivers involves "claimed ineffective assistance of counsel relate[d] directly to this waiver or its negotiation," which is a narrower exception than the Defendant's argument recognizes.

claim." *United States v. Martinez,* 169 F.3d 1049, 1053 (7th Cir. 1999) (quoting *United States v. Barnes,* 83 F.3d 934, 940 (7th Cir. 1996)); *see also Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) ("An inaccurate prediction of a sentence alone is not enough to meet the standard."). A defense attorney's failure to advise his client that he would be classified as a career offender has been found inadequate to establish a constitutional violation. *Barnes*, 83 F.3d at 938–39; *see also id.* at 940 (stating that "a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great, as is the case when an attorney errs about whether his client will be classified as a career offender"); *United States v. Dumes,* 313 F.3d 372, 383 (7th Cir. 2002) (upholding denial of motion to withdraw guilty plea when defendant did not know that he was a career offender). The Supreme Court has observed:

> [A] decision to plead guilty must necessarily rest upon counsel's answers [to questions such as how strong the Government's case is, how a court would view facts, and how a court would resolve legal issues], uncertain as they may be. Waiving trial entails the inherent risk that the good faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970). Although a gross mischaracterization of the sentencing consequences of a plea may indicate deficient performance, it is not proof of deficiency. *Bethel,* 458 F.3d at 717. A defendant can show that his attorney's performance was deficient "if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Barnes*, 83 F.3d at 940.

The Defendant did not submit any evidence that would tend to show that his counsel told him that he would not be found to be a career offender pursuant to Sentencing Guideline § 4B1.1 and that he would receive a 100-month sentence. The Defendant has provided no sworn

16

statement to that effect, and the letter from defense counsel that he attached to his Replies [ECF Nos. 83 & 84] is dated May 20, 2010, which is over one year after the change of plea hearing. The letter states that "we may disagree with the conclusion of the District Court regarding the career criminal assessment" and that defense counsel believed that "the District Court incorrectly decided the issue as to whether or not [his] one conviction for Intimidation as a Class D felony was a crime of violence." (ECF Nos. 83 at 8 & 84 at 8.) Nothing in this letter suggests that counsel promised or told him he would not be found to be a career offender. Additionally, the Defendant's claim is difficult to reconcile both with the clear language of Paragraph 8(d) of the Plea Agreement that clearly highlighted the possibility that the Court could find that the Defendant is a career offender pursuant to Sentencing Guideline § 4B1.1, in which case the agreed term of 100 months of imprisonment would not apply, and with the Court's detailed dialogue with the Defendant during the change of plea hearing. The Court finds that the Defendant has failed to demonstrate that the alleged misrepresentation of his attorney, even if the allegation is true, establishes a constitutionally deficient performance. Furthermore, the Defendant has not shown that his counsel failed to make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles, and to discuss that analysis with him.

As for the prejudice prong, the Defendant must establish with objective evidence a reasonable probability that, but for counsel's advice, he would not have accepted the plea. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996); *see also Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (explaining that the defendant must show that the advice "was a decisive factor in his decision to enter a conditional plea instead of going to trial or entering an

unconditional plea in hope of obtaining a lower sentence"); *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (stating that "[i]t is only in this prejudice context that consideration of advice versus a guarantee warrants discussion. The strength of an attorney's prediction—that is whether it was billed as a guarantee, advice, belief, or guess[—]goes toward determining whether the attorney's statements were the decisive factor in the defendant's decision to take a plea or opt for trial. Obviously a guarantee of a particular sentence might be more likely to affect a decision to take a plea or go to trial than an attorney's mere advice couched in all of the usual disclaimers that attorneys are trained to assert."). The Seventh Circuit has "stated many times that a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice." *Bethel*, 458 F.3d at 718; *see also Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (holding that the defendant's self-serving statement alone was insufficient to establish  prejudice with respect to acceptance of a plea).

Even if the Court were to assume that defense counsel's performance was deficient by miscalculating the sentence, the Court finds that the Defendant has not shown that counsel's advice or promise was a decisive factor in entering into the conditional plea agreement and that he would have gone to trial but for counsel's advice. The Defendant's submission merely alleges but does not show with objective evidence that his counsel's advice was a decisive factor. Indeed, the Defendant does not explicitly state that he would have gone to trial had he known he was going to be determined to be a career offender. (*See* Def.'s Reply 2.) Additionally, Paragraph 8(f) of the Plea Agreement highlighted that no one could predict the precise sentence that the Court would impose and that the Court had authority to impose a sentence within the statutory maximum set for the offense, which was set forth in the Plea Agreement, and Paragraph

12 stated that "no promises ha[d] been made to [him] other than those contained in this agreement." As noted above, Paragraph 8(d) of the Plea Agreement specified that the agreed term of 100 months imprisonment would not apply if he was found to be a career offender under Sentencing Guideline § 4B1.1. Furthermore, the Court's advisements and inquiries during the change of plea hearing undercut the Defendant's claim of prejudice. *See Bethel*, 458 F.3d at 718–19. At that hearing, the Defendant, under oath, confirmed that no person had made any promises or assurances to him that were not in the Plea Agreement to persuade him to accept the Agreement and that he understood that the agreed term of 100 months of imprisonment was conditioned upon the Court's determination regarding whether he was a career offender pursuant to Sentencing Guideline § 4B1.1. He also acknowledged his understanding that the Court would not be able to determine the advisory guideline sentence until after the PSR was prepared and after the Government and the Defendant had an opportunity to challenge facts in the report and the probation officer's recommendations regarding the application of the guidelines. In pressing his claim that counsel assured him that he was not a career offender and would receive a sentence of 100 months imprisonment, the Defendant is essentially asking the Court to disregard sworn statements he made at the change of plea hearing and the affirmations he made in his Plea Agreement. *See United States v. Martinez,* 169 F.3d 1049, 1054 (7th Cir. 1999) ("'[T]he record of a Rule 11 proceeding is entitled to a "presumption of verity" . . . and the answers contained therein are binding.'") (quoting *United States v. Winston,* 34 F.3d 574, 578 (7th Cir. 1994)). The Defendant is not entitled to relief based upon his ineffective assistance claim as to the alleged material misrepresentation or assurance regarding the career offender enhancement and the Defendant's sentence.

b.      *Preservation of Career Offender Enhancement for Appeal*

An appellate waiver is valid even when the parties fail to anticipate a change in the law. *United States v. McGraw,* 571 F.3d 624, 630–31 (7th Cir. 2009). Likewise, "the sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art." *Barnes*, 83 F.3d at 940. This is even more so after *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Sentencing Guidelines advisory. In a circumstance in which defense counsel forecloses appellate review of an issue, a defendant must prove "prejudice by showing that the omitted issue may have resulted in a reversal of the conviction, or an order for a new trial." *Kitchen v. United States*, 227 F.3d 1014, 1021 (7th Cir. 2000). If a defendant does not show that an appeal of the issue would have resulted in a reversal, he has not shown prejudice, and his ineffective assistance of counsel claim fails. *Id.* at 1021–22.

The Defendant has not shown that counsel's performance was deficient for failing to preserve for direct appeal a challenge to this Court's ruling regarding whether the Defendant was a career offender under Sentencing Guideline § 4B1.1, in addition to a challenge to this Court's ruling on the Defendant's Motion to Suppress Evidence. Additionally, the Defendant has not demonstrated that an appeal of this Court's ruling on the career offender enhancement would have resulted in a reversal. In advance of sentencing, defense counsel submitted a well-researched and argued Sentencing Brief addressing the recommendation in the PSR that the Defendant receive a career offender enhancement pursuant to Sentencing Guideline § 4B1.1,

based upon the Defendant's separate convictions for intimidation. After the Government filed a Response, the Court issued a Sentencing Memorandum finding that the Defendant had previously been convicted of at least two felony crimes of violence under the Sentencing Guidelines and overruling the Defendant's objection to the career offender enhancement. The Court's ruling was premised upon Sentencing Guidelines and Supreme Court and Seventh Circuit precedent, especially *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009) (applying *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009); *Chambers v. United States*, 555 U.S. 122 (2009); *Begay v. United States*, 553 U.S. 137 (2008); *James v. United States*, 550 U.S. 192 (2007); *Shepard v. United States*, 544 U.S. 13 (2005)), and *United States v. Unthank*, 109 F.3d 1205 (7th Cir. 1997). The law that has developed on this issue since this Court issued its career offender ruling in this case has not been favorable to the Defendant's position. *See United States v. Curtis*, — F.3d —, 2011 WL 2714100, at *3–4 (7th Cir. July 13, 2011) (finding that the crime of aggravated discharge of a firearm under 720 Ill. Comp. Stat. 5/24-1.2(a) is a crime of violence for purposes of the career offender enhancement in Sentencing Guideline § 4B1.1 and relying on *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) (defining "physical force" as "force capable of causing physical pain or injury to another person" for a similar definition in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i)), for the proposition that "[d]ischarging a firearm is unquestionably the use, attempted use, or threatened use of physical force"); *United States v. Capler*, 636 F.3d 321, 324–29 (7th Cir. 2011) (finding that the crime of unlawful restraint under 720 Ill. Comp. Stat. 5/10-3 is a crime of violence for purposes of the career offender enhancement in Sentencing Guideline § 4B1.1 because the crime is roughly similar to the enumerated offenses in the residual clause of Sentencing Guideline § 4B1.2(a)).

Consequently, the Defendant's claim that his counsel was ineffective because he should have preserved the right to appeal the career offender enhancement fails, and § 2255 relief is not available as to the failure to preserve the career offender enhancement issue for direct appeal.

### 3.    Career Offender Enhancement

The Defendant contends that his intimidation convictions were not crimes of violence, that he was not properly or lawfully adjudged a career offender under Sentencing Guideline § 4B1.1, and that recent decisions of the United States Supreme Court (*Begay v. United States*, 553 U.S. 137 (2008), and *Johnson v. United States*, 130 S. Ct. 1265 (2010)) prohibit the application of this enhancement given by this Court. On this issue, the Defendant's argument focuses on the Court's ruling, not counsel's assistance. In his waiver of his right to collaterally attack his sentence, the Defendant waived his right to bring this challenge, and it is foreclosed here.

Nevertheless, prior to his sentencing, the Defendant objected to the recommendation in the PSR that the career offender enhancement in Sentencing Guideline § 4B1.1 applied. The Court carefully considered the Defendant's objection under the applicable law and issued a Sentencing Memorandum [ECF No. 55] on November 2, 2009, overruling the Defendant's objection. The Court found that the Defendant's two intimidation convictions were crimes of violence in that they had as an element the use, attempted use, or threatened use of physical force against another person. The Defendant has presented no new arguments or evidence that show the Court erred in finding the Defendant a career offender under Sentencing Guideline § 4B1.1, and nothing in *Johnson* or *Begay* suggests a different conclusion than that reached by the Court in its Sentencing Memorandum.

## C.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make "a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted). When a district court dismisses a petition on procedural grounds without reaching the underlying constitutional claims, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. However, additional argument is not necessary here. Given the Defendant's knowing and voluntary waiver of his right to collaterally attack his sentence, the Defendant cannot make the necessary showing as no reasonable jurist would find it debatable whether this Court was correct in its ruling on his Motion. Consequently, the Court will decline a certificate of appealability as to the Defendant's Motion.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 70] and DECLINES a certificate of appealability as to the Defendant's Motion. The Defendant may seek a certificate of appealability from the court of appeals under Federal Rule of Appellate Procedure 22.

SO ORDERED on July 26, 2011.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT